STATE OF NORTH CAROLINA            IN THE GENERAL COURT OF JUSTICE
                                   SUPERIOR COURT DIVISION
COUNTY OF FORSYTH                  FILED
                                   23 CVS 3719

2023 JUL 25 P 12: 22

FORSYTH CO., C.S.C.

ACTION SPORTS DISTRIBUTORS, )
INC., )
 )
    Plaintiff, )
 )
v. )     VERIFIED COMPLAINT
 )
GROOVE VENTURES, CORP, )
 )
    Defendant. )

    NOW COMES Plaintiff Action Sports Distributors, Inc., by and through counsel, and alleges and complains of Defendant as follows:

    1.    Plaintiff Action Sports Distributors, Inc. ("Action Sports") is a business corporation organized under the laws of North Carolina with its principal office in Forsyth County, North Carolina.

    2.    Defendant Groove Ventures, Corp ("Groove Ventures" or "Groove") is a business corporation organized under the laws of Tennessee with its principal office at 1220 School Street Apartment 25, Spring Hill, Tennessee.

    3.    Jurisdiction and venue are both proper in that Defendant entered a contract for the sales services and performance of Plaintiff, whose principal office and location from which the contracted work was to be completed, was and is in Forsyth County.

    4.    On or about November 30, 2018, Plaintiff and Defendant entered a contract effective November 30, 2018, hereinafter referred to as the "Domestic Sales Representative Agreement" and attached as Exhibit A, wherein Plaintiff agreed to promote the sale and use of Groove Ventures' products.

1

5. Under the Domestic Sales Representative Agreement, Defendant appointed Plaintiff as the exclusive wholesale sales representative for the territory as later defined and stated that Defendant could "appoint other sales representatives in the Territory so long as they are not in the Market space."

6. Plaintiff's territory was defined as the entire southeast portion of the United States. Both parties at times added and removed Florida from Plaintiff's territory, as Groove Venture's needs dictated.

7. Paragraph 11 of the Domestic Sales Representative Agreement states that 30-days written notice of termination of the agreement is required to for termination and without said notice, the agreement would automatically renew for an additional year.

8. Plaintiff and Defendant operated successfully under the Domestic Sales Representative Agreement for several years, and the agreement automatically renewed on November 30th annually.

9. Neither Plaintiff nor Defendant provided the other with written notice of termination of the Domestic Sales Representative Agreement in 2022. Thus, under the terms of the Domestic Sales Representative Agreement, such agreement automatically renewed for the term of one year on November 30, 2022.

10. On or around March 19, 2021, Plaintiff received notice from one of its Groove Ventures customers that one of Defendant's in-house sales representatives had been contacting the customer in attempt to sell Groove Ventures products inside Plaintiff's Territory, a direct violation of Paragraph 1 of the Domestic Sales Representative Agreement.

11. This notice is key to understanding this case. The truth of what occurred here is that Defendant decided to move its sales force in-house or the equivalent, and Defendant did not

2

wish to wait until the Domestic Sales Representative Agreement's term ended OR pay damages. Instead, Defendant arrogantly decided to engage in what amounted to three schemes, using its superior bargaining position, to attempt to terminate the Domestic Sales Representative Agreement without paying damages.

12. **SCHEME 1.** On or about February 7, 2023, Plaintiff received a letter from Lana Miller, the Defendant's director of wholesale, which stated that March 31, 2023 would be Plaintiff's final day as a sales representative for Groove Ventures (the "February 7 letter"). A copy of the February 7 letter is Exhibit B.

13. The February 7 letter did not state that Plaintiff had breached the Domestic Sales Representative Agreement, did not provide notice of any supposed breach, and failed to provide Plaintiff a period of thirty days to cure any supposed breach as outlined in Paragraph 11 of the Domestic Sales Representative Agreement.

14. On February 10, 2023, Plaintiff received an email from Adam Suttle, the sales director for Groove Ventures, which stated that Plaintiff was "highly regarded", again without notice or mention of any supposed breach of the agreement.

15. On or about February 17, 2023, counsel on behalf of Plaintiff delivered a letter to Defendant that stated the February 7 letter was not effective termination under the terms and conditions of the agreement. A copy of such letter is Exhibit C.

16. Since the February 17, 2023 letter, Plaintiff has had several phone conversations with members of Defendant and during these calls, praised Plaintiff on its work and sales performance.

17. Defendant Groove, realizing that Scheme 1, trying to terminate the Domestic Sales Agreement without cause before the term expired would not work, and moved onto Scheme 2.

3

18. **SCHEME 2**. Via email April 4, 2023, attached hereto as Exhibit D, Groove proposed a miniscule settlement, with a proverbial hand in the glove, simultaneously telling Plaintiff that its commissions on all SKUs would be cut to 5%. That amounted to a unilateral reduction in compensation of essentially 50%, putting Plaintiff in a position where, of course, it could not profitably continue operating. The Domestic Sales Agreement does not allow for a wholescale, nondiscriminatory 50% cut in compensation for all SKUs.

19. Plaintiff did not back down, so Groove moved to Scheme 3.

20. **SCHEME 3**. Next, via letter dated June 13, 2023, Groove pretended it recently determined that Plaintiff is selling competing goods, thus immediately terminating the Domestic Sales Representative Agreement. That letter is Exhibit E.

21. Exhibit E's claim is demonstrably false.

22. One, Plaintiff informed Groove in or around August 2021 that it was selling Bellroy products on a phone call involving Andrew Gillett of Action Sports, and Lana Miller and Spencer Pruitt from Groove. Lana Miller and Spencer Pruitt did not object to Plaintiff selling the Bellroy products because they did not directly compete with Groove. After that date, until June 13, 2023, after Scheme 1 and Scheme 2 failed, Groove did not ask Plaintiff to cease selling Bellroy products, all the while knowing Plaintiff was selling Bellroy products.

23. Two, even Exhibit E exposes Groove's disingenuity. It noted that Plaintiff on April 5, via email, discussed its selling of those products, about 9 weeks earlier. Plaintiff was hiding nothing. There was no brilliant recent determination. Even absent the 2021 conversation, Groove knew Plaintiff was selling Bellroy products for weeks. It was a third pretextual scheme to avoid Groove's contractual obligations.

4

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

24. Plaintiff realleges and reincorporates the factual allegations as set forth above.

25. Plaintiff and Defendant had a valid and enforceable contract, supported by valuable consideration within the terms listed in the Domestic Sales Representative Agreement.

26. The Domestic Sales Representative Agreement represents an offer and acceptance of the terms therein and was signed by both parties.

27. Defendant Groove Ventures has failed to provide Plaintiff with the exclusive right to sell Defendant's products in his Territory or proper termination as agreed upon in the Domestic Sales Representative Agreement.

28. Defendant failed to comply to the terms and conditions of the Domestic Sales Representative Agreement as detailed in the factual section of this complaint and has breached said agreement.

29. Defendant's breach of contract has damaged Plaintiff in an amount in excess of $25,000.00 plus attorneys' fees and expenses.

## SECOND CAUSE OF ACTION
## (ALTERNATIVE) UNJUST ENRICHMENT

30. Plaintiff realleges and reincorporates the factual allegations as set forth above.

31. In the alternative, Plaintiff provided valuable sales performance and services to Defendant pursuant to the Domestic Sales Representative Agreement and as said forth above.

32. Plaintiff expected to be compensated for the valuable sales and performance services it provided to Defendant.

33. Defendant was aware that Plaintiff expected to be compensated for the sales and performance services Plaintiff provided, the Defendant accepted said services that Plaintiff

provided, and Defendant witnessed Plaintiff providing the said services. However, Defendant has not paid the money it owes to Plaintiff for the sales and performance services it provided.

34. Allowing Defendant to retain the monetary benefits of Plaintiff's valuable sales and performance services would result in an unjust enrichment to Defendant.

35. If the Court concludes there is no contract between the parties, alternatively, Defendant's unjust enrichment has damaged Plaintiff in an amount in excess of $25,000.00 plus attorneys' fees and expenses.

## THIRD CAUSE OF ACTION
## UNFAIR AND DECEPTIVE TRADE PRACTICES

36. Plaintiff realleges and reincorporates the factual allegations as set forth above.

37. This case does not present a mere breach of contract, or even a non-aggravated intentional breach of contract.

38. Plaintiff is a company owned by one family who worked via contract for Groove for 5 years. Plaintiff's performance was outstanding. He was faithful. He made Groove much money.

39. Groove made a decision, which it is perfectly entitled to make, to bring its sales force in-house. At that point, Groove, a large company, knew it could bully Plaintiff.

40. Groove had 3 options. One, transition to the in-house sales in November 2023, per its contracts. Two, pay damages for early breach. Three, intimidate, deceive, and try to push Plaintiff, with far fewer resources, to go away without paying damages.

41. No facts exemplify this idea better than Scheme 2. Realistically, cutting gross by 50% would put any company out of business, and there was no basis to do so.

42. Groove's actions violate G.S. § 75-1.1 *et. seq.* They are unfair, rude, oppressive, and the exertion of unequal bargaining power.

6

43. Grove's actions are in or effecting commerce.

44. Groove's actions are deceptive and have the tendency and capacity to deceive.

45. Groove's violations of Chapter 75 actually, foreseeably, and proximately damaged Plaintiff in an amount in excess of $25,000.

46. Damages must be trebled per G.S. § 75-16.

WHEREFORE, Plaintiff prays:

1. That Plaintiff have and recover from Defendant damages for breach of contract, or alternatively, unjust enrichment, in an amount in excess of $25,000.00 plus expenses and attorneys' fees;

2. That the costs of this action, including reasonable attorneys' fees as allowed by law, be taxed against Defendant, including attorney fees allowed by the Domestic Sales Representative Agreement per § 23 and G.S. § 75-16.1 for Groove's unreasonable refusal to settle;

3. Treble damages per G.S. § 75-16;

4. A trial by jury on all issues so triable; and

5. For such other relief as is necessary and just.

This the 25 day of July, 2023.

Andrew L. Fitzgerald
N.C. State Bar No. 31522
FITZGERALD HANNA & SULLIVAN PLLC
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 27101
Telephone: 336-793-8536
Fax: 336-793-8536
*Attorney for Plaintiff*

## VERIFICATION

The undersigned, Andrew Gillett, is authorized to execute this Verification on behalf of Action Sports Distributors, Inc., and being first duly sworn, deposes and says that he has read the foregoing Verified Complaint and knows its contents thereof, that said contents are true according to his own knowledge, except those matters and things therein stated upon information and belief, and as to those, he believes the same to be true.

*Authorized Representative for Plaintiff Action Sports Distributors, Inc.*

_____
Andrew Gillett

Sworn and subscribed before me this 24th day of July, 2023.

_____
Signature of Notary Public

Shelley M. Mitchell
Printed name of Notary Public

My Commission Expires: 10/25/2025

8